IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | | |
|---|---|---|
| DON BURGETT, ET AL. | § | |
| Vs. | § | CIVIL ACTION NO. 2:06-CV-117 |
| MEBA MEDICAL AND BENEFITS PLAN | § | |

## MEMORANDUM OPINION AND ORDER

**1.     Introduction.**

In this ERISA case, the plaintiffs challenge an ERISA plan's insistence that they sign a subrogation agreement as a condition to the processing and payment of their medical bills. The Summary Plan Description ("SPD") contains no such requirement and therefore the administrator legally erred when it imposed the requirement. Under this record, and in light of the applicable regulations, the administrator abused its discretion. The plaintiffs' motion for summary judgment (#16) is therefore granted, and the defendant's cross-motion for summary judgment (#8) is denied. The motion for extension of time to respond (#10) is denied as moot.

**2.     Undisputed Facts.**

Plaintiff Don Burgett enrolled in the MEBA Medical and Benefits Plan ("Plan"), a self-insured multi-employer welfare benefit plan, regulated under ERISA. Two Plan documents are relevant to this case. First, there is the SPD--the summary of the Plan's benefits and procedures provided to the participants and beneficiaries. Second, there is the more formal Plan document, entitled Plan Rules and Regulations. Neither party contends that the Plan Rules and Regulations

constitute an SPD under the applicable ERISA statute and Department of Labor regulations, although the Plan Rules and Regulations were included within a booklet provided to the participants and beneficiaries, along with the SPD.  The Plan Rules and Regulations are also available on the defendant's website.

Both the Plan Rules and Regulations and the SPD contain a reimbursement and subrogation provision, through which the Plan can seek to recoup payments made to covered persons when third parties cause injuries and illnesses.  The SPD states, in relevant part, that:

> The Plan's reimbursement and subrogation provision applies when someone else may be responsible for your medical expenses.  The Plan has this provision to make sure Plan assets are only used to pay for claims that are not able to be paid by another source.  Under this provision, if someone else may be responsible for an illness or injury, you or your dependent might have to repay the Plan from any recovery you or your depend [sic] receive, allow the Plan to file a lawsuit in your or your dependent's name, or allow the Plan to intervene in a lawsuit you or your dependent file.  The reimbursement and subrogation provision is described here and in Article XVII-A of the Plan Rules and Regulations.  If you or your dependent has an injury or illness that someone else may be responsible for, you or your dependent, and any attorney representing you or your dependent should read this Section and Article XVII-A carefully.
>
> If the Plan pays benefits for you or your dependent because of an injury or illness that someone else may be responsible for, and if you or your dependent receive payment for that injury or illness from any source, you or your dependent must repay the Plan. By accepting benefits from the Plan for an injury or illness that someone else may be responsible for, you or your dependent assign to the Plan, and grant the Plan a lien on, any payment you or your dependent receive from someone else for that injury or illness. (If you or your dependent receive payment under an insurance policy issued to and in the name of you or your dependent, the Plan is not entitled to be repaid.)

The SPD also provides that the Plan is entitled to recover all amounts paid by the Plan, that the Plan trustees may reduce the amount to be repaid under certain circumstances, and that the Plan may file its own suit or intervene in an existing suit against third parties who may be responsible for the injuries or illness.  The SPD does not, however, contain a cooperation clause or otherwise require

the execution of a subrogation agreement as a condition to the processing or payment of claims for medical benefits.

Like the SPD, Article XVII-A of the Plan Rules and Regulations includes a reimbursement and subrogation provision. The language of the Plan Rules and Regulations describing the reimbursement and subrogation rights is generally consistent with the SPD; however, the Plan Rules and Regulations also provide that "[t]he Covered Person shall execute and deliver such instruments and take such actions as the Plan may require to protect the Plan's rights."

On October 8, 2005, Magan Burgett, Mr. Burgett's daughter, was severely injured when she was thrown from a moving Honda ATV. Magan suffered a broken jaw in three places, fractures in her back, a broken arm, lacerated liver, and various other injuries. When Magan's parents submitted her medical bills to the Plan administrator, the administrator conditioned payment on the execution of a subrogation agreement.[1] The plaintiffs refused to sign the agreement, claiming it increased the Plan's subrogation rights beyond those set forth in the SPD or the Plan Rules and Regulations. The Plan then refused to process claims for Magan's medical care, and this suit followed.

**3.    Discussion.**

In the present case, the defendant argues that the administrator reasonably interpreted the Plan to require execution of the subrogation agreement before paying benefits under the Plan. The defendant points to the language of the Plan Rules and Regulations and observes that the Plan Rules and Regulations require that a "Covered Person shall execute and deliver such instruments and take such actions as the Plan may require to protect the Plan's rights." The defendant argues that the administrator's consistent interpretation of this provision to require the execution of a subrogation

---

[1] The medical bills are estimated to be approximately $89,467.18.

agreement is legally correct. Moreover, the defendant argues that even if the administrator's interpretation is not legally correct, the administrator did not abuse its discretion.

The plaintiffs do not dispute that the SPD and the Plan Rules and Regulations provide a right to reimbursement and subrogation. The plaintiffs argue, however, that the SPD contains no requirement that a participant or beneficiary execute a subrogation agreement before medical bills are processed and paid. The plaintiff argues there is a conflict between the SPD and the Plan Rules and Regulations because, although both documents extend subrogation and reimbursement rights to the Plan, the Plan Rules and Regulations may require the execution of additional documents, such as a subrogation agreement, to protect the Plan's rights. The SPD does not. The plaintiff argues that the court should resolve the conflict by reference to the SPD because the administrator has interpreted the language of the Plan Rules and Regulations to impose an additional condition to the receipt of benefits under the Plan.

The MEBA Plan gives the administrator discretion to interpret its terms. As a result, the court's review of the decision is narrow and is limited to whether the administrator abused its discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989); *Pylant v. Hartford Life and Acc. Ins. Co.*, __ F.3d __, 2007 WL 2353165 (5th Cir. August 20, 2007). The court uses a two-step inquiry to determine whether a plan administrator abused its discretion in construing plan terms. *Rhorer v. Raytheon Eng'rs & Constructors, Inc.*, 181 F.3d 634, 639 (5th Cir. 1999). First, the court determines the legally correct interpretation of the plan and whether the administrator's interpretation accords with that interpretation. *Id*. If that construction is correct, then no abuse of discretion occurred and the inquiry ends. *Id*. at 639-40. If, however, the court determines that the administrator has not given the plan the legally correct interpretation, then the court assesses whether the

administrator's interpretation constitutes an abuse of discretion. *Id.* at 640.

ERISA requires that an SPD be furnished to each participant and beneficiary. 29 U.S.C. § 1022. The SPD must be written in a manner calculated to be understood by the average plan participant, and must be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan. *Id*.

Although the SPD contains a summary of the plan terms, the governing law requires certain specific information to be included in the SPD. In particular, the SPD must set forth all circumstances which may result in disqualification, ineligibility, denial, or loss of benefits. 29 U.S.C. § 1022(b). More particularly, the applicable federal regulations require that the SPD must include "a statement clearly identifying circumstances which may result in disqualification, ineligibility, denial, loss, forfeiture, suspension, offset, or reduction of recovery (for example, by exercise of subrogation or reimbursement rights) of benefits that a participant or beneficiary might otherwise reasonably expect the plan to provide." 29 C.F.R. 2520.102-3.

Because the SPD is the primary document provided to the participants and the beneficiaries, in the event of conflicts between the plan and the SPD, the language of the SPD controls. *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 982 (5th Cir. 1991); *Hamilton v. Pilgrims Pride Employee Group Health Plan*, 37 F. Supp.2d 817, 822 (E.D. Tex. 1998). This is because the average beneficiary relies upon the SPD, not the plan. Accordingly, the SPD most nearly represents the intention of the parties. *Fallo v. Piccadilly Cafeterias, Inc.*, 141 F.3d 580, 584 (5th Cir. 1998).

In the present case, the SPD contains no requirement that the beneficiaries or participants execute any subrogation agreement prior to having their claims for benefits processed. The defendant suggests, however, that such a requirement is found in the Plan's Rules and Regulations

and therefore there is no conflict between the two documents. According to the argument, the SPD places the participants and the beneficiaries on notice of the more detailed Plan Rules and Regulations because the SPD expressly directs the participants and beneficiaries to the Plan Rules and Regulations' subrogation provision. In addition, the defendant points to the SPD's language which states that in cases of conflict between the SPD and the Plan documents, the Plan language controls.

The defendant's arguments are inconsistent with the law in the Fifth Circuit. In *Hansen v. Continental Ins. Co.*, the court expressly rejected the argument that plan language should control over the terms of the SPD in cases of conflict. 940 F.2d 971, 981 (5th Cir. 1991). According to the court, "ERISA requires, in no uncertain terms, that the summary plan description be 'accurate' and 'sufficiently comprehensive to reasonably apprise' plan participants of thier rights and obligations under the plan." *Id*. The court rejected the plan's argument that it could disclaim this result by including language in the SPD advising the beneficiary that the language of a master policy controlled over conflicting language in the SPD. According to the court in *Hansen*, adoption of the plan's proposed rule would have eviscerated the requirement that the SPD be accurate and comprehensive. *Id*. at 982.[2]

The SPD is of course a summary of the plan and as such cannot contain every term. *Fallo v. Piccadilly Cafeterias, Inc.*, 141 F.3d 580, 584 n. 20 (5th Cir. 1998). "The omission of certain provisions and terms from the SPD will not alter the Plan." *Id*. (*citing Sprague v. General Motors Corp.*, 133 F.3d 388 (6th Cir. 1998)). In this case, however, the SPD contains no requirement that

---

[2] Equally unavailing, for similar reasons, is the defendant's argument that the Plan adequately notified the participants and beneficiaries of the requirement to execute a subrogation agreement by attaching the Plan Rules and Regulations to the SPD and including it on a website.

the participant or beneficiary execute any agreement (as a condition to benefits or otherwise) to aid the Plan in the enforcement of its subrogation and reimbursement rights.  The language of the Plan Rules and Regulations, however, imposes an affirmative requirement on the participant, and, as construed by the administrator, is a prerequisite to obtaining benefits.  This case is thus analogous *Fallo*, where the SPD purported to set out the procedures to obtain extended coverage but omitted certain steps required by the Plan.  The court in *Fallo* gave the language of the SPD controlling effect.  *Id*. at 584 n. 20.  More to the point, the administrator in this case decided that the failure to execute the subrogation agreement barred the Burgetts' claim for benefits.  As a result, under ERISA, the SPD was required to advise the participants and beneficiaries of that fact.  Its failure to do so cannot be cured by resort to the Plan Rules and Regulations.  Any other result would allow a plan administrator to avoid its obligation to include within the SPD a statement of the circumstances that could result in the denial or loss of benefits by omitting those circumstances from the SPD and including them in the plan documents.

The defendant also relies on cases to support its position that the courts have recognized the authority of administrators to condition benefits on the execution of subrogation agreements.  Examined closely, these cases actually support the plaintiffs' position.  For instance, in *Alves v. Silverado Foods, Inc.*, 6 Fed. App'x. 694 (10th Cir. 2001), the court held that an administrator did not abuse its discretion or act arbitrarily and capriciously when it conditioned benefits on the execution of a written subrogation agreement.  The SPD expressly provided that "[w]hen a right of recovery exists, the Covered Person will execute and deliver all required instruments and papers as well as doing whatever else is needed to secure the Plan's right of subrogation as a condition to having the Plan make payments."  *Id.* at 704.

7

Likewise, in *Cagle v. Bruner*, 112 F.3d 1510 (11th Cir. 1997), the court enforced an employee benefit plan's decision to require the execution of a subrogation agreement prior to paying benefits. The parties agreed that the SPD language was controlling on the issue of the Fund's subrogation rights. *Id*. at 1517 n.4. The SPD in that case stated that "[the participant or beneficiary] may be asked to execute documents or take such other action as is necessary to assure the rights of the Fund." *Id*. at 1518.

In *Kress v. Food Employers Labor Relations Ass'n*, 391 F.3d 563 (4th Cir. 2004), the court affirmed an administrator's refusal to advance benefits absent a signed subrogation agreement. The SPD contained a cooperation clause that provided "[t]he Fund requires that you and/or your eligible dependent (if applicable) and your attorney fill out, sign, and return to the Fund office a subrogation agreement that includes a questionnaire about the accident." *Id*. at 566.

Finally, in *Gorman v. Millwrights' Health Benefit Trust Fund*, the court concluded that the Fund had acted arbitrarily and capriciously when it required execution of a subrogation agreement that contained conditions beyond those in the SPD's cooperation clause. 410 F.3d 1194, 1200 (10th Cir. 2005). There, the SPD contained a clause requiring the participant, upon request, "to execute and deliver such instrument or papers as may be required and do whatever else is necessary to carry out [the subrogation and reimbursement] provision." *Id*. at 1198.

None of these subrogation cases addressed head-on the question presented here: whether the failure of the SPD in this case to include a similar cooperation clause precludes a plan administrator from conditioning benefits on the execution of such an agreement. The cases are significant illustrations, however, of the popularity of such clauses in SPDs and the ease with which such a

provision might have been included in the Plan's SPD.[3]  The governing statute and regulations require the SPD to inform the participants and beneficiaries of the circumstances that might result in the denial of or the loss of benefits.  The requirement to execute a subrogation agreement was not a condition listed in the SPD, although it was arguably included in the Plan Rules and Regulations.  When the formal plan documents conflict with an SPD, the SPD controls.  *Washington v. Murphy Oil USA, Inc.*, __ F.3d __, 2007 WL 2326071 (5th Cir. August 16, 2007).  Because the SPD is the controlling plan document and contains no requirement that the participants or beneficiaries execute a subrogation agreement as a condition to receiving benefits, the administrator was legally incorrect when it imposed that requirement.

Even though the administrator's decision was legally incorrect, the court must still determine whether the administrator abused its discretion.  When considering whether there has been an abuse of discretion, the court considers: (1) the plan's internal consistency under the administrator's interpretation, (2) any relevant regulations, (3) the factual background underlying the decision, and (4) any indication of lack of good faith.  *Lain v. UNUM Life Ins. Co. of America,* 279 F.3d 337, 346 (5th Cir. 2002).

Although the Plan Rules and Regulations are consistent with the requirement imposed by the administrator, the SPD is the controlling document.  It contains no such requirement.  As a result,

---

[3]  The defendant also cites *Harvey v. Machigonne Benefits Administrators*, 122 F. Supp.2d 179 (D. Me. 2000), in support of its position that the administrator may require the execution of a subrogation agreement prior to paying benefits.  The case stands for that proposition, but it does not consider whether an SPD must inform the participants and beneficiaries of such a requirement.  Moreover, the court in *Harvey* cited to specific language in plan documents requiring the cooperation of the participants and beneficiaries, but it is not clear whether the language was included in both the SPD and the underlying plan documents.

this factor is not relevant. The second factor strongly supports the plaintiffs–the applicable regulations require the SPD to inform the beneficiaries and participants of circumstances that might result in the denial or loss of benefits. The third and fourth factors also favor the plaintiffs. Here, the administrator steadfastly relied on the Plan Rules and Regulations as opposed to the SPD to deny a claim for medical benefits arising out of a serious accident, when the SPD did not contain any language requiring the execution of a subrogation agreement. Application of these factors counsels the court to find an abuse of discretion. A contrary holding would encourage noncompliance with the ERISA regulations designed to provide participants and beneficiaries with accurate and comprehensive summaries of their rights under benefit plans. The court will grant the plaintiffs' motion for summary judgment and deny the defendant's motion for summary judgment.

**4.      Conclusion.**

For the foregoing reasons, the court grants the plaintiffs' motion for summary judgment and denies the defendant's motion for summary judgment. The plaintiffs are directed to file any application for attorneys fees, in accordance with the relevant standards under ERISA, within 10 days from the date of this order.

SIGNED this 25th day of September, 2007.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE